IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

AT JUNE TERM, 1868.

---

### JAMES BIRCKHEAD v. JAMES CUMMINS.

1. A lease by parol and not put in writing, not exceeding three years from the making thereof, whereupon the rent reserved amounts to two-third parts, at least, of the full improved annual value of the thing demised, is valid for all purposes, before entry by the tenant, or anything done under it, by either of the parties.
2. A suit by the landlord for the rent reserved on such a lease, sustained, the tenant having refused to enter, and never having been in possession of the premises.
3. The execution of a lease does not put the tenant in possession of the premises, and, consequently, he is not in a position to be evicted by his landlord.

---

The above stated cause came on to be heard at a Circuit Court holden at Newark, in the county of Essex, at the Term of January, eighteen hundred and sixty-seven, before the Honorable David A. Depue, one of the Associate Justices of the Supreme Court, and a jury, upon the pleadings; upon which trial the following facts were proved.

44

That in the month of August, 1865, defendant applied to George W. Campbell, who was the agent of plaintiff, to rent a furnished house belonging to Mrs. Whittingham, which plaintiff then had, situated in Orange, in said county of Essex, for the winter, and which house (exclusive of furniture) the plaintiff held as a tenant by a lease, which would expire on the first day of April then next following, the house and furniture then being in the possession of one Hecksher, under a lease from plaintiff, which would expire on the first of November. Campbell, after consulting the plaintiff by letter, informed the defendant, verbally, that he would rent him the house, furnished, from the first of November, 1865, to the first of April, 1866, being the whole residue of her term in said house, for seven hundred dollars. Defendant replied, that he would take it. No other agreement of any kind was entered into. Afterwards, and before the first day of November, defendant notified Campbell that he would not take the house, and did not take possession of the house or furniture. Defendant took another house in Orange, and occupied it with his family during that winter, and plaintiff's house remained unoccupied, except as is hereinafter stated.

Shortly after the first of November, Campbell applied to Blackwell & Smith, real estate brokers, and wished them to find a tenant for the house, giving as a reason, that if defendant would not pay the rent he wanted to get the money from some other party.

Blackwell & Smith failed to find a tenant for the house, and so reported to Campbell a week or ten days after they had been requested to find a tenant for it. Mr. Campbell did not consult plaintiff before putting the property in the hands of . Blackwell & Smith, nor had he any express authority from her to do so. Campbell had also made the contract with plaintiff's former tenant.

The furniture was in the house on the first of November, but did not remain there all the following winter. Plaintiff dismantled the house, and sold and removed the furniture

during the winter, stored some for safe keeping, and sold the remainder at private sale, to different parties, without notice to defendant and without his consent.    During the winter the house was twice broken open, but defendant was never informed that it had been broken open—none of the furniture was removed until after the house was broken into.

In the month of January, 1866, Smith, of the firm of Blackwell & Smith, offered the house to let to Mrs. Knorr, who was looking for a house to occupy immediately.

Plaintiff, prior to March 1st, 1866, without notice to, or the consent of the defendant, made an arrangement with John W. Burt (who had previously taken the house from the 1st of April, 1866,) by which Burt agreed to purchase of plaintiff the portable furnace, which was in the house, and in consideration thereof plaintiff agreed with Burt that he might take possession of the house before the 1st of April, in pursuance of which arrangement Burt obtained the key of the house from plaintiff, and did take possession of the house, put in masons, painters, and paper-hangers, painted three rooms, and papered four rooms, and put in a new range, and put the house in repair.    At the time these laborers commenced work, which was about the first of March, the furniture had been nearly all removed from the house.    About the week before the first of April, Burt moved into the house with his family, and continued to occupy it until after the first of April.

Upon the above facts being proved, at the suggestion of the court a verdict was taken for the plaintiff, subject to the opinion of the court in *banc*, upon the following points :

I.  Whether the plaintiff is entitled to recover on an actual lease, made by parol, and without being put in writing, for the term of five months, the defendant not having occupied or taken possession of the demised premises.

II.  Whether the facts and circumstances proved on the trial, amounted to an eviction so as to preclude the plaintiff from a recovery.

The jury are to be considered as finding the issues left to them in the charge of the court, in favor of the plaintiff.

If the court are of opinion that the lease was void, or that there was an eviction, judgment to be entered for the defendant; if otherwise, judgment to be entered on the verdict.

The case was argued at bar before the CHIEF JUSTICE, and Justices ELMER, VREDENBURGH, and WOODHULL.

For plaintiff, *C. Parker.*

For defendant, *T. N. McCarter.*

BEASLEY, CHIEF JUSTICE.   One of the important questions arising in this case, on the points reserved is, whether a lease by parol, for a term less than three years, can be enforced between the parties, in case the lessee has failed to enter on the premises demised.   The subject belongs to the proper exposition of the statute of frauds.

By the ninth section of that act, it is provided in the words following: "All leases, estates, interests of freeholds, or terms of years, or any uncertain interests of, in, to, or out of any messuage, lands, tenements, or hereditaments, made or created, or hereafter to be made or created, by livery and seizin only, or by parol, and not put in writing and signed by the parties so making or creating the same, or their agents, thereunto lawfully authorized by writing, shall have the force and effect of leases, or estates at will only, and shall not, either in law or equity, be deemed or taken to have any other or greater force or effect; any consideration for making any such parol leases or estates, or any former law or usage to the contrary notwithstanding; except, nevertheless, all leases, not exceeding the term of three years from the making thereof, whereupon the rent reserved to the landlord, during such term, shall amount to two third parts, at least, of the full improved value of the thing demised."

This provision, standing alone, would appear to be unmistakably clear and intelligible; its effect would be to convert terms, exceeding three years, which were created by parol, into estates at will, and leaving unaffected by such regulation, lesser terms, similarly created, whereon the rent reserved was of the relative value designated. But it was insisted, upon this argument, that the clause just quoted was to be taken in connection with that provision of the fourteenth section of the same act, which declares that no action shall be brought " upon any contract or sale of lands, tenements, or hereditaments, or any interest in or concerning them," the deduction from the two sections being that a parol lease, unexecuted by an entry of the tenant under it, is a mere agreement for an interest in lands, and, consequently, inefficacious by force of the latter of the statutory regulations just quoted. It is not to be denied, that some of the leading text writers have adopted this view, and it is certainly not without some support from casual expressions contained in judicial opinions. But I do not think any case can be found which has been rested on such a construction of this act, nor have I arrived at the conclusion that such construction is admissible. It seems to me it would violate both the language and intent of the act. Upon examining the statute with reference to this matter, it will be found, in looking for the intention of the law-makers, that the entire subject of the creation of terms of years in lands, is provided for in the ninth section of the act whose language has already been recited. The purpose was to prevent the setting up of fraudulent terms of years, and the precaution interposed is, that such interests, unless evidenced by writing, shall be mere estates at will. This is the general rule thus established as a safeguard; but leases, not exceeding three years, whereupon the rent reserved during such term shall amount to two thirds, at least, of the full improved value of the thing demised, are expressly made exceptions. Such an arrangement, considered in itself, and as a preventive of fraud, seems to be well adapted to its end. An estate which can

be terminated by either party at will, is not likely to be set on foot by corrupt practices, nor is there much more danger of a resort to such arts, with regard to a lease which cannot exist beyond three years, and upon which the rent to be paid must nearly approximate to the real annual value of the thing demised. I find this view expressed by Sir Edward Sugden, 1 *Vend. & Pur.* 93, who, speaking of the statute in question, says: "The first and second sections appear to enact that all interests actually created without writing shall be void, unless in the case of a lease not exceeding three years, at nearly rack-rent, which exception must have been introduced for the convenience of mankind, and under an impression that such an interest would not be a sufficient temptation to induce men to commit perjury."

The section of this act, therefore, which regulates these leasehold interests, I consider adequate to its purpose, and complete in itself; and being thus self-sufficient, it does not appear to be probable that it was the design of the framers of the law, that it should be subject to the subsequent provisions.

Such, I think, is the statutory manifestation of intention; nor, in my opinion, does the language of the several clauses, relatively viewed, admit of a different result. The term used in the exceptive branch of the ninth section is "leases" —that is, leases of a certain description. Now, it cannot be denied that a lease is a contract concerning an interest in lands; and therefore if the fourteenth section be applicable to this class of cases at all, such a contract cannot be enforced. The effect consequently would be, that by the exception in the former of the two sections, an interest is preserved, which is annulled by the incongruous operation of the latter. Nor can I perceive the propriety of the distinction that the latter section applies to the lease only in its condition as unexecuted by the entry of the lessee; because it is undeniable that after such entry it is as much a contract respecting an interest in lands as it was before the doing of such act on the part of the tenant. Let us take the ordinary

instance of a lease reserving rent to be paid by the tenant, and stipulating for repairs to be done by the landlord; such a lease obviously is a contract concerning an interest in lands, as soon as it is concurred in by the parties; but can any one affirm that it loses its contractual character when the lessee enters upon the possession of the premises? I must think such lease is good or bad in each stage of its existence. It is true that the entry by the tenant is a part execution of the lease; but it is to be remembered, that part performance, unless in cases specially provided for in the act, will not in a court of law validate a contract voidable by the statute under consideration. That doctrine is, exclusively, the creature of courts of conscience. A parol agreement to purchase lands, however on its own peculiar grounds enforceable in equity, is no more valid at law after entry and other part performance, than it was antecedent to the doing of any act under it by the vendee. I am at a loss therefore to perceive how it can be claimed that a parol lease can be validated by the lessees' going into possession. It is true that by his entry upon the land, the tenant acquires certain rights and faculties which he did not before possess; but it is also equally true that, after such event, the lease under which he holds does not essentially change its nature. It still remains an executory contract. Before any act done under it, it is a lease in the strictest sense of the term, and consequently within the very words of the exception of the statute. At the moment of its execution, the lessee acquires an interest which is vested—an *interesse termini*. Such an interest has the properties of a right; it can be transferred or assigned; after the death of the lessee before entry, it will go to his executors or administrators, and it is subject to extinguishment by release to the lessor. The principal effect of an entry under the lease is, that such step puts the lessee in the possession of the land demised, and consequently confers upon him such rights as are incident to actual occupation. Nothing is perceived in this change which can introduce a discrimination with regard to the applicability of the clause

Birckhead v. Cummins.

of the statute relating to contracts concerning interests in lands. It is impossible to apply this latter provision to the section relating to leases without introducing into it a new condition, and which, in an important respect, modifies its character. The section regulating the creation of terms for years, indicates in very clear terms, when unqualified by extraneous infusions, that leases of a certain character may be made by parol, the only requisites being, a term of limited duration and a reservation of a rent of a certain proportionate value. By the construction which incorporates into it the regulation contained in the fourteenth section, an additional requisite is introduced, and to the essentials of a definite duration and adequate rent, is superadded that of an actual entry by the lessee. This conjunction of the two sections in order to produce this result, disturbs the adjustments of the several parts of the act, and introduces confusion where none otherwise will exist. If it had been the design to require an entry of the tenant to legalize a parol lease of the description in question, there is every reason to believe that the indication of such an intention would have been found in that section which prescribes the essential form and qualities of such an agreement; as it does not exist in that connection, the reasonable conclusion is that it does not exist in the statute.

And it is to be likewise observed, that this construction accords with the expressions and structure of the whole of the section relating to the modes of acquiring interests in lands. The phrase, " except, nevertheless, all leases not exceeding the term of three years from the *making thereof*," clearly contemplates the existence of parol leases giving a right of possession *in futuro*, for the duration of the estate is limited from the date of the agreement, and not from that of going into possession. The making of the lease is designated as the event upon which the three years are to begin to run; a regulation of no significance, unless upon the idea that a present lease by parol, providing for a future possession, could be lawfully made.

My construction, then, of the clause in question is, that as it provides in an adequate and complete manner for the class of cases embraced in it, such special regulations are not to be affected by the general provision in the fourteenth clause relating to contracts touching lands.

This, subject, as will be found upon a careful research, has not received much judicial elucidation. The only decision which I have found which bears directly upon it, is that of *Riley* v. *Hicks*, 1 *Stran.* 651, which was a suit on a parol demise, *habendum* from a day in the future. "It was objected," says the report, "that this being to commence at a future day, was but a lease at will since the statute of frauds. The Chief Justice (Lord Raymond) at first thought it a good objection, but upon further consideration he was of opinion, that the exception was not confined to leases that were to commence from the time of making, but was general as to all leases that were not to hold for above three years from the making." This case is cited as law in *Buller's N. P.* 187, and in *Woodfall's L. & T.* 14–15. It will be observed that the principle declared is, that a lease by parol is valid, although the right of possession is to accrue in the future. Such a lease cannot, then, of necessity derive its validity from the entry of the tenant, for it would be absurd to suppose that the statute had authorized a lease to be made, to commence in possession at a future day, and yet that such lease had for no purpose any binding efficacy until such day had arrived. This case is an authority in this court, as it was decided in the time of George the Second, and no doubt was ever expressed as to its correctness prior to the Revolution. As far as I am aware, the opinion of the legal profession in this state has been in accordance with this exposition of the statute. In 2 *Selw. N. P.* 844, (*9th ed.*) it is admitted that the English practice has been until a recent period—if it can be said to have undergone any change in this respect—in conformity with the principle adopted in *Strange.* And in *Bolton* v. *Tomlin*, 5 *Adol. & El.* 856, Lord Denman makes the remark, that leases not exceeding three

years have always been considered as excepted from the operation of that clause of the statute of frauds which relates to contracts touching lands. A similar view appears to be taken by Mr. Archbold, *L. & Ten.* 76; and by Mr. Roberts, *Rob. on Frauds* 241. The latter author, as also Mr. Smith —see *Smith on Con.* 139—discriminates very properly between parol demises and parol agreements for a demise, the latter being within the operation of the fourteenth section of the act, but the former without it.

There are two recent cases, which Mr. Chitty in his *Treatise on Contracts, p.* 320, seems to think have put a different version on those clauses of the statute of frauds which have been above commented on. The cases are those of *Inman* v. *Stamp,* 1 *Stark. R.* 12, and *Edge* v. *Strafford,* 1 *C. & J.* 391. The two decisions rest upon precisely the same ground-work of facts, and consequently reflect light on each other; but it does not seem to me that they will, when carefully analyzed, be found to support the hypothesis which has been sought to be erected upon them. It has been said that they lay down the broad rule that a parol lease, of the description excepted by the statute, cannot be sued on before an entry by the tenant. But, in my apprehension, neither case has so wide a scope. Each of these actions was founded on an alleged parol agreement that the tenant would take possession of the demised premises—and damages were claimed because he refused to do so—and the point of each decision is, as understood by me, that *such* an agreement concerning land, being no necessary or usual part of a lease, was not enforceable on account of the statutory prohibition against unwritten contracts relating to lands. Lord Ellenborough, in *Inman* v. *Stamp,* does not give the grounds of his decision; but in the subsequent case, and which is decided on the strength of its predecessor, Bayley, Baron, indicates very clearly the reason for his judgment, and which is that just intimated. In his comments upon the statute, he says: "The legislature might intend to make a distinction between those cases in which the complaining party was contented to confine himself to its operation as

a lease, and sought nothing more than as a lease it would give him, and those in which he went further, and founded upon it a claim for damages, which might far exceed what he could claim under it in the character of a lease. * * * Is, then, the agreement on which this action is brought a contract for an interest in lands? *Inman* v. *Stamp* says distinctly that it is; and unless that case can be successfully impeached, it must govern the present. But can that case be successfully impeached? Is not *the agreement* on which this suit is brought a contract for an interest in lands? * * * The effect, then, of the statute of frauds, as far as it applies to parol ,cases not exceeding three years from the making, is this, that the leases are valid, and whatever remedy can be had upon them in their character of leases, may be resorted to; but they do not confer the right to sue the lessee for damages for not taking possession." From this extract it is apparent that this decision is not authority for the principle that a parol lease is in no respect valid until the lessee has gone into possession; but on the contrary it distinctly admits, that as a lease it is valid before such event. Unless, therefore, the reservation of rent can be said to be no part of the essence of a lease, this case is not an authority against a right of action upon it to recover such rent before the tenant has entered. It would be singular, indeed, to hold, as the case of *Edge* v. *Strafford* does, that on the execution of the parol lease, and before any entry under it, the tenant acquires an *interesse termini*, but that before he enters his landlord cannot sue him for the rent reserved. If such were the law, the tenant having the right to enter at any time during the term, could compel the lessor to keep the premises vacant for the same period, and yet, by omitting to enter, he could preclude a suit against himself for the rent. I think the cases of *Inman* v. *Stamp* and *Edge* v. *Strafford*, decide nothing more than that a suit for damages cannot be brought on an agreement that the lessee will take actual possession of the premises; and that ruling, if correct, does not affect the question now under consideration.

The conclusion to which I have come on this branch of the case is that, by a just construction of the statute of frauds, a parol lease, not exceeding three years from the making, and reserving a rent in the proportion designated, is good, from its inception, and will support an action for the rent in arrear, without any entry having been made upon the premises by the lessee.

The next interrogatory propounded to this court is whether the facts and circumstances proved on the trial amounted to an eviction, so as to preclude the plaintiff from a recovery?

Upon the argument, it was urged for the defence, that the conduct of the landlord was such that it constituted clearly an eviction. It appears, from the case sent to this court, that it was in proof that, before the commencement of the term, the defendant notified the plaintiff, his landlord, that he would not take the premises, and that, in point of fact, he never entered upon them. It further was shown, that after such notification the plaintiff endeavored to obtain another tenant, and that during the term he dismantled the house and removed the furniture, which had been rented to the defendant with the house, storing some of it for safe keeping, and selling the remainder. He also did other acts set forth in the case sent up, and which were complained of. The controversy on the argument was whether this conduct was a technical eviction of the tenant.

But I have been at a loss to perceive how the question of eviction can arise, for how is it possible that there has been an eviction when it is admitted that the tenant never went into possession? Nothing can be clearer than that he did not gain by force of his lease the actual possession of the property demised. The books are entirely clear as to this doctrine. The lease confers a right to enter, but nothing more. Before the tenant has gone into actual possession, he cannot maintain trespass for a tortious invasion of the property, nor by such invasion can his rights be in any wise affected. This doctrine of the law is thus clearly expounded

in the case of *Bracebridge* v. *Clouse*, 2 *Plow.* 423. . " But if a man seized of lands makes a lease for years, to commence presently, or at a day to come, there before the lessee hath ·entered or the lessor hath waived the possession, the lessee has but an *interesse termini*, which is an agreement executory to have the land, and he has not the possession of the land, but that continues always in the lessor until entry is made, so that the entry makes the possession and reversion."

Nor is the language of Bayley, B., in the case of *Edge* v. *Strafford*, already referred to, less explicit. " Before entry," ·such are his words, " what effect has a lease upon the land ? It creates an *interesse termini* in the lessee, which the lessee ·may grant over, but the land still remains in the lessor. A release to the lessee will not enlarge his estate. Why ? Because he has nothing in the land till entry. The whole estate is in the lessor. The lessor cannot grant over the estate by the description of the reversion. Why ? Because the possession is wholly in him ; so the lessee cannot bring trespass, *because he has no possession.*" For the same principle, see *Co. Litt.* 26, *b ; Id.* 270, *a ; Cro. Car.* 110 ; *Saffyn* v. *Adams*, 5 *Rep.* 124 ; *Cro. Jac.* 60, *S. C. ;* 3 *Bac. Abridg't, tit. "Leases,"* 446–448–462.

The legal effect of eviction is so penal, that the doctrine is not to be favored ; and although in some cases the highly questionable fiction of a constructive expulsion has, of late years, been contrived, it has never yet been suggested that an ·eviction can be founded on a constructive possession.

I think, upon this second point, that the answer of this court must be, that the facts in this case do not show an eviction.

Before leaving the subject, it is proper to remark that the conclusion that the lease proved in the case will sustain this action, is founded on the assumption that the rent, which, in point of fact, was reserved, amounted to two third parts, at the least, of the full improved annual value of the thing demised. This is a quality of the parol lease requisite to ·bring it within the saving of the exception of the ninth

clause of the statute. The reservation of rent in this case, may or may not have been adequate in amount. All the facts proved at the trial have not been reported to this court, and, as far as appears, at the trial no question was made by the defence, on the ground of the insufficiency of the amount of rent reserved. The question submitted to this court is, whether "an actual lease made by parol, and without being put in writing, for the term of five months, the lessee not having entered or taken possession," will support the action. Here, then, is a definite state of facts, specified in the interrogatory, upon which this court is to base its opinion, and we cannot now suppose that the case thus made by the parties is defective, and that a circumstance, which would modify essentially the legal character of the transaction, has been omitted. I think we can no more infer, in the absence of an express statement to that effect, that the lease in controversy was wanting in the requisite of a proper rent, than we can conjecture that it is invalid because the lessor was under age, or was subject to other incompetency. The legal intendment must be in favor of the propriety of the proceedings at the trial in all respects which are not directly presented for review, the rule being that the presumption will be such, "*ut res magis valeat quam pereat.*" I do not think, therefore, that this objection, which, in all probability, is not founded in fact, can be raised at this stage of the case.

Let the Circuit Court be advised in conformity with the foregoing views.